IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| **GLENDA BOSWELL, individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**ST. DOMINIC HEALTH SERVICES, INC. and FRANCISCAN MISSIONARIES OF OUR LADY HEALTH SYSTEM, INC.,**<br><br>*Defendants*. | CAUSE NO. 3:23-CV-151-CWR-LGI |

## ORDER

Before the Court are Plaintiff's motions to toll the statute of limitations, to file restricted documents, and to certify a collective action. Docket Nos. 33, 42 and 43. Also before the Court are Defendants' motions to restrict documents from the public and to file a sur-reply. Docket Nos. 45 and 50.

Upon review, the motions to restrict and Defendant's motion for leave to file a sur-reply will be granted. Additionally, Plaintiff's motion to certify a collective will be granted in part. Finally, Plaintiff's motion to toll the statute of limitations will be denied.

**I.  Background**

Plaintiff Glenda Boswell is a registered nurse at St. Dominic Hospital in Jackson, Mississippi. On February 28, 2023, she filed this putative collective action alleging violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*, against Defendants St. Dominic Health Services, Inc. and Franciscan Missionaries of Our Lady Health System, Inc.

Boswell's allegations stem from a ransomware attack. She states that in December 2021, Defendants' workforce and payroll management service, Kronos, "was subject to a ransomware attack that disabled the functionality of its payroll software for hundreds of companies, including the Defendants." Docket No. 1 ¶ 17. Boswell alleges that she along with over 14,000 of Defendants' non-exempt employees were affected. She says some employees were not paid on time, some employees were paid less than the wages to which they were entitled[1], and some employees did not receive payment at all.

For their part, Defendants say there were actually two distinct events: "(1) a ransomware attack on the cloud-based timekeeping platform, Kronos, used only for Louisiana employees and (2) irregularities experienced in the implementation of a new payroll platform, Oracle." Docket No. 44 at 4. They claim that the Kronos ransomware attack did not affect their payroll operations in Mississippi—the so-called "Mississippi Market."

Defendants state the second event—the "irregularities"—occurred because of their attempt to transition their "payroll program from Lawson to the multinational payroll and database platform, Oracle." *Id.* at 7. Defendants say this affected only the Mississippi Market. The last payroll processed via Lawson occurred on December 23, 2021, and the first attempted payroll processed through Oracle occurred the first week of January. *Id.*

After motion practice and an unsuccessful petition for a writ of mandamus, the relevant details of which will be discussed below, the present motions followed.

---

[1] As an example, Boswell submits that she and similarly-situated employees did not receive their proper "shift differential, education differential, critical care differential, call-pay, and other healthcare specific bonus payments owed to certain workers based on their qualifications and specific work efforts." Docket No. 1 ¶ 26.

**II.    Discussion**

    **A.**    **Motions to Restrict**

Restricting documents may be appropriate when a matter involves confidential business information for which public disclosure would create a risk of harm to the party. *See N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015). Such motions "are decided on a case-by-case, document by document, line by line basis and must be congruent to the need." *USAA Life Ins. Co. v. McCabe*, No. 3:23-CV-393-CWR-LGI, 2023 WL 6556012, at *1 (S.D. Miss. Sept. 5, 2023) (citation and quotation omitted). "To prevail on a motion to restrict, the movant must provide the Court with clear and compelling reasons to shield a document from public access." *Id.* (citation and quotation omitted).

Boswell requests to file a restricted memorandum and exhibits. She submits that it is necessary to restrict these documents "to protect the confidentiality of certain information" contained therein. Docket No. 42 at 1.

After reviewing her unopposed motion to restrict and the proposed restricted documents, the Court finds that Boswell's asserted privacy interest in her financial records and communication with her employer outweighs the public's common law right of access to the memorandum and proposed exhibits. Accordingly, her motion is granted, and these documents will be limited to review by the Court and counsel for the parties. Boswell is directed to deliver these documents to the Clerk of Court.

For their part, Defendants request that the Court restrict two documents related to their finances. They argue these documents should be restricted because they contain "sensitive, confidential and proprietary pay and financial data." Docket No. 45 at 1. As before, the Court finds that the Defendants' privacy interest in their confidential, proprietary,

3

and financial information outweighs the public's interest in disclosure. Defendants' motion is granted, and these documents will be limited to review by the Court and counsel for both parties. Defendants are directed to deliver these proposed exhibits to the Clerk of Court.

### B. Motion for Leave to File a Sur-Reply

"It is within the Court's discretion to grant or deny additional briefing." *Randall v. Volvo Car USA*, No. 3:22-CV-414-CWR-FKB, 2023 WL 1073703, at *2 (S.D. Miss. Jan. 27, 2023). A sur-reply has been found appropriate where the moving party raises new arguments in the reply that go beyond rebuttal. *Univ. of Miss. Med. Ctr. v. Sullivan*, No. 3:19-CV-459-CWR-LGI, 2021 WL 5414301, at *1 (S.D. Miss. Oct. 7, 2021) (citations omitted).

Defendants seek leave to file a sur-reply because Boswell "has presented new arguments that were not addressed in her Motion to Certify Collective and presented mischaracterizations of Defendants' Opposition that must be clarified." Docket No. 50 at 1.

The Court agrees that Boswell's reply raises additional arguments for which a response would be beneficial. And given the limited scope of the sur-reply, the Court does not see the potential for prejudice such that Boswell should be allowed the opportunity to respond. It will consider Defendants' proposed sur-reply, Docket No. 50-1, which need not be refiled on the docket.

### C. Motion to Certify a Collective Action

"The FLSA allows, in pertinent part, an employee who alleges that his or her employer violated the FLSA's minimum wage requirement to initiate a suit 'for and [on] behalf of himself . . . and other employees similarly situated.'" *Sandoz v. Cingular Wireless, L.L.C.*, 700 F. App'x 317, 320 (5th Cir. 2017) (quoting 29 U.S.C. § 216(b)). FLSA collective actions allow plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of

4

resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 336 (5th Cir. 2023).

Unlike class actions, which require affected persons to opt-out of the suit, collective actions require similarly-situated employees "to opt-in via written consent." *Swales v. KLLM Transport Servs., L.L.C.*, 985 F.3d 430, 435 (5th Cir. 2021).

Historically, courts applied a two-step approach to certifying collective actions. *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). In *Swales*, however, the Fifth Circuit abandoned the two-step method. In determining whether to certify a collective action, courts must now "rigorously scrutinize the realm of 'similarly situated' workers . . . from the outset of the case" to "determine whether the requested opt-in notice will go to those who are actually similarly situated to the named plaintiffs." *Swales*, 985 F.3d at 434. Courts should also:

> (1) Identify what facts and legal considerations will be material to determining whether a group of "employees" is "similarly situated";
> (2) Authorize preliminary discovery as early as possible to determine if and when to send notice to potential opt-in plaintiffs;
> (3) Consider, early in the case, whether merits questions can be answered collectively, when considering the scope of a collective and the "similarly situated" analysis; [and]
> (4) Consider all of the available evidence when determining whether and to whom notice should be issued.

*Williams v. D'Argent Franchising, L.L.C.*, No. 1:20-CV-1501, 2023 WL 3059192, at *4 (W.D. La. Apr. 23, 2023).

"The plaintiff bears the burden of showing that he and other prospective plaintiffs are similarly situated." *Barron v. Sterling Sugars Sales Corp.*, No. 6:21-CV-3741, 2022 WL 1571233, at * 2 (W.D. La. May 17, 2022). Though *Lusardi* is no longer binding, the Fifth Circuit has

reasoned that the factors outlined in *Lusardi* may still be useful in determining whether employees are similarly-situated. *Loy*, 71 F.4th at 336-37. These factors include (1) the factual and employment settings of the prospective plaintiffs (2) the various defenses available to the defendant and if any defenses are individualized rather than applying to the prospective plaintiffs as a whole; and (3) fairness and procedural considerations. *Id.*at 336. Still, the use of these factors is not mandatory because "there is no one-size-fits-all analysis or mechanical test to apply." *Id.* at 337.

In this case, Boswell requests that the Court certify a collective action comprised of "All current and former hourly and overtime employees who worked for St. Dominic's Health Services, Inc. and/or Franciscan Missionaries of Our Lady Health System, Inc., anywhere in the United States, at any time from December 11th, 202[1], through the final disposition of this matter." Docket No. 43 at 1.

Boswell submits that these persons are sufficiently similar because they all "live in either Mississippi or Louisiana, which do not have additional wage and hour protections above the FLSA." Plaintiff's Restricted Exhibit A at 7. She adds that all are managed through Defendants' back-end consolidated services, involving the same HR, Finance, Payroll, Compensation, IT, Compliance, Marketing, Risk Management, Legal, and Mission Integration Departments. Boswell then argues that the harm caused to this proposed group was caused by the same failures in the centralized payroll office during a 30-day window from mid-December 2021 to mid-January 2022.

Defendants oppose Boswell's motion. They first say the proposed collective action is too broad. They urge the Court to limit the collective action to:

> [C]urrent and former non-exempt registered nurses with Bachelor of Science in Nursing degrees who were paid on the 8 and 80 Overtime System, who were properly coded as 8 and 80, and were employed by Defendants in the Mississippi Market on January 1, 2022 at the time of the Oracle transition.

Docket No. 44 at 35.

Defendants then contend that Boswell "does not allege a common practice or policy that impacted the entire putative class. Rather her claims focus on two separate, distinct, unforeseeable or fortuitous occurrences that she contends resulted in individualized impacts as to herself and each putative class member." *Id.* at 16. Defendants thus submit that liability turns on "each member's factual and employment settings." Relevant differences, they say, include "the time of employment, geographic location, method of compensation, and position of each individual plaintiff." *Id.* at 17.

### 1. Disparate Factual and Employment Settings

#### a. Time of Employment

Again, Boswell's proposal includes all current and former employees who worked for Defendants "at any time from December 11, 202[1], through the final disposition of this matter." Docket No. 43 at 1. According to Defendants, though, this is over-inclusive. They maintain that employees hired after "January 2022 could not have been and were not impacted by these events and, therefore, are not similarly situated to those employees who were employed by Defendants at the time of each event." *Id.* Defendants say the same is true for employees on unpaid leave in December 2021 and January 2022.

The Court agrees. The relevant events occurred over the span of a few weeks, from the end of 2021 through the beginning of 2022. The allegations do not stem from continuous

7

errors. Accordingly, Boswell would not be similarly situated to employees on leave at the time or those hired after the relevant period.

### b.     Geographic Location

Defendants then attack Boswell's plan to include employees who worked "anywhere in the United States." *Id.* They say that's too broad. The Court agrees. Boswell has not shown the need for nationwide certification when the allegations are limited to payment issues involving employees located in two states.

Defendants then press that the collective action should be limited to Mississippi, rather than Mississippi and Louisiana. They argue that Boswell:

> is not similarly situated or representative of Defendants' employees in the Louisiana Market as to the impact of the ransomware attack on those employees. . . . The ransomware attack did not impact the Mississippi Market or Defendants' ability to accurately pay the Mississippi employees for the pay period directly following the Kronos ransomware attack. [Plaintiff], and all other Mississippi based team members . . . received their regular paychecks based on the regular Mississippi housed non-cloud-based Kronos timekeeping system for that pay period.

Docket No. 44 at 18.

Boswell replies that "the critical issue remains Defendants' management and operational control over payroll processes that affected both markets. The unifying factor is not the location of hourly employees, but the Defendants' centralized decisions and actions that led to widespread payroll disruptions." Docket No. 49 at 3.

At this stage, the Court must assess whether merits questions can be answered collectively without issuing an "endorsement of the ultimate outcome in the case." *Klick v. Cenikor Found.*, 94 F.4th 362, 368 (5th Cir. 2024) (citation omitted). With this in mind, Boswell's argument is well-taken. Evidence that collective members "were affected by a common

8

policy, plan, pattern or practice" can be helpful in establishing that employees were similarly situated. *Williams*, 2023 WL 3059192, at *3. Boswell has presented evidence that employees in the Mississippi and Louisiana Markets were subject to the same "shared services" payroll and other HR-related departments. Therefore, she has adequately presented evidence from which the Court can assess the degree of similarity among the employees in Mississippi and its neighboring State.

When called to address the merits of this issue, the parties and the Court may be tasked with determining whether the alleged harm stemmed from one event or two. Yet, at this stage, the Court's task is to access whether that question can be answered collectively. The answer to that question is "yes." This factor weighs in favor of including employees located in both the Mississippi and Louisiana Markets.

### c. Work Schedule and Method of Compensation

The parties agree that Boswell's position is classified as "8 and 80." The parties, however, disagree about whether the collective action should be limited to persons on the 8 and 80 schedule only, or all affected workers.

For context, "8 and 80" refers to the FLSA's authorization of an overtime compensation method for certain workers. The law "permits a 14-day period to be established for the purpose of computing an overtime compensation by an agreement or understanding between an employer engaged in the operation of a hospital . . . and any of his employees employed in connection therewith." 29 C.F.R. § 778.601(a). In short, these employees are entitled to overtime if they work over 8 hours any day or 80 hours total over a 14-day period and need not work 8 hours each day of the proceeding 14-day period. *See id.*

9

Boswell recognizes that the 8 and 80 system has a "slight difference" compared to ordinary overtime calculation because it "is more flexible in arranging shift hours." Plaintiff's Restricted Exhibit A at 8. She nevertheless argues that this distinction is not substantial because "there is no difference in how those overtime hours, once calculated, are compensated" and the amount of overtime pay due "is the same as any non-exempt employee, which is one and a half times regular pay." *Id.* Boswell further observes that Defendants' failure to mention the 8 and 80 schedule as a separate category in their written policy is proof that there is no substantial difference between workers paid via the different systems.

Defendants maintain that the calculation of hours is a relevant distinction. They say employees may be entitled to different amounts of compensation under the traditional 40-hour workweek model and the 8 and 80 system. *See* Docket No. 44 at 8-9.

Defendants then pivot and argue something different in nature. Of the 330 Mississippi employees that were eligible for 8 and 80 classification, they say that only 48 of them, including Boswell, were properly coded in their system. *Id.* at 20. The remaining employees were compensated for their overtime under the traditional 40-hour workweek model. *Id.* From this Defendants go on to aver that some employees, including those properly coded as 8 and 80, were *overpaid* due to this system error, and that Boswell cannot be similarly situated to both categories of individuals. *Id.*

Again, Boswell bears the burden of showing that she is situated similarly to the potential collective action members. The Court finds that she has not met her burden on this factor. Having reviewed the parties' exhibits, including those exhibits now restricted, the Court is not persuaded that the 40-hour workweek employees and the 8 and 80 employees

10

are similar enough that merits questions could be answered collectively. The parties admit the overtime is calculated differently under these models. Accordingly, the Court cannot say that determining merits questions related to employees compensated using the 40-hour workweek model compared to those compensated via the 8 and 80 overtime system will present common questions of law and fact best resolved in one proceeding.

### d. Position

Potential class members need not be in an identical position for collective certification. *See Harris v. Hinds Cnty., Miss.*, No. 3:12-CV-542-CWR-LRA, 2014 WL 457913, at *4 (Feb. 4, 2014). "If the job duties among putative class members vary significantly, however, then class certification should be denied." *Id.*

Defendants argue that the potential opt-in plaintiffs do not all share the same position. Docket No. 44 at 21. According to Defendants, the potential plaintiffs hold over "1,355 different positions including "patient drivers, painters, and other non-healthcare employees." *Id.* They then assert that Boswell's FLSA allegations apply only to "registered nurses who have a Bachelor of Science in Nursing." *Id.* at 22. Defendants contend that the Court "will have to inquire as to each individual's compensation package, position title, educational background, department and duties to determine whether individual plaintiffs were paid in compliance with the FLSA." *Id.* at 23.

Boswell responds that position titles are not the primary concern, as all the potential collective action members were subject to Defendants' payroll system failure. She maintains that the "systemic errors in payroll processing and timekeeping affected all hourly and overtime employees uniformly." Docket No. 49 at 1. Boswell also disagrees that the violations matter only to registered nurses with a B.S. in Nursing.

11

Here, the Court agrees with Defendants that sending notice to individuals who collectively hold over 1,000 different positions would be overly broad. Boswell's exhibits show that her job duties as a registered nurse differ greatly from certain other positions that are coded as 8 and 80, including "housekeeper," "painter," and "security guard." Plaintiff's Restricted Exhibit C. Because the duties of these positions vary greatly, this factor does not weigh in favor of including them in the collective action.

The same is not true for healthcare positions similarly-situated to Boswell, such as certified nursing assistants, surgical imaging technicians, and licensed practical nurses. Merits questions for those categories of positions can be addressed collectively. Several of them may be eligible for bonuses not available to others, but the parties and the Court can address these questions based on the groups of employees without having to scrutinize the specific compensation of each employee. Accordingly, healthcare employees should be included in the collective action.

At this stage, therefore, the collective action will include those healthcare employees who Defendants allege were not properly coded in their system as 8 and 80 because that determination turns upon merits questions the Court may be called to address later.

### 2. Individual Defenses

Next, Defendants argue that their available defenses will vary based on each class member's geographic market, position, eligibility for differentials and bonuses, work schedule, time of employment, whether they were impacted by Kronos or Oracle, the extent of that impact, and then by whether there was a violation of the FLSA. Defendants claim that defenses include "employee eligibility for the bonus claimed due, whether the bonus claimed

due is non-discretionary or discretionary, and whether the bonus was properly included or excluded from the regular rate of pay." Docket No. 44 at 24.

Boswell says these objections are overblown. Individual defenses do not necessitate separate trials, she says, because "the defenses revolve around a centralized failure in payroll management that impacted all similarly situated employees." Docket No. 49 at 3. According to her, "[t]he legal questions pertain to whether Defendants failed to pay overtime and regular wages in a timely and accurate manner due to these systemic issues, not individual employee conditions." *Id.* at 3-4. Because Defendants have admitted to the system failure, she maintains that the only remaining question is "how much is now owed to which specific hourly workers." *Id.* at 3.

Defendants disagree with summation of the relevant question at this stage, urging the Court to consider "whether the merits questions can be answered collectively." Docket No. 50-1 at 2 (emphasis omitted). Defendants also assert that Boswell's centralized payroll theory is unsupported by the evidence presented. *Id.*

At this stage, the potential for cumbersome individualized defenses is not so great that separate trials are warranted. Many of Defendants' contentions against collective certification go to the merits of Boswell's claims. The Court, however, is reminded that when merits questions arise at this stage, the task is not to decide it, but instead to "consider whether the merits question may be answered on a collective basis." *Klick*, 94 F.4th at 368 (emphasis omitted). Any determination the Court makes now should not "serve as an endorsement of the ultimate outcome in the case." *Id.*

As it relates to arguable defenses, the Court believes that inquiries into whether affected persons' claims stem from one event or two, whether the statute of limitations will

bar relief, overpayments, and bonus eligibility "will largely turn on the same questions." *Swales*, 985 F.3d at 438. Answering these questions will rely largely on the same evidence that can then be applied to different collective members in groups. Thus, the Court is not persuaded that individual trials are warranted even after considering the various defenses available to the Defendants here.

### 3. Fairness and Procedural Considerations

> In evaluating fairness and procedural considerations, the Court must consider the primary objectives of a collective action: (1) to lower costs to the plaintiff through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity.

*Mahoney v. Farmers Ins. Exchange*, No. 4:09-CV-2327, 2011 WL 4458513, at *10 (S.D. Tex. Sept. 23, 2011) (citation omitted).

The Court must also determine whether it can "coherently manage the class in a manner that will not prejudice any party." *Id.*

Defendants submit that allowing Boswell to proceed through a collective action would be unmanageable and prejudicial. They say her claims are "so individualized that they are not amendable to generalized evidence and a trial on the various individualized defenses would be unmanageable due to the significant differences in employment experiences." Docket No. 44 at 32.

As discussed above, several aspects of Defendants' concern are persuasive. The Court finds that certification of a smaller collective action than Boswell seeks is appropriate. Only Defendants' healthcare workers in Mississippi and Louisiana paid on the 8 and 80 Overtime System are similarly-situated for purposes of this litigation. This is true whether the claims stem from one event or two distinct events, as Defendants argue. And limiting the action to

14

current and former employees during the relevant time mitigates Defendants' fear that the action will become too large or unwieldy. The alternative to this ruling—dozens or hundreds of plaintiffs asserting claims in dozens or hundreds of individual cases—is an unreasonable use of the parties' and the judiciary's resources.

In sum, the claims raised by Boswell and concerning members of the collective action, as limited, are capable of "efficient resolution in one proceeding" as they contain "common issues of law and fact arising from the same alleged misconduct." *Loy*, 71 F.4th at 336. Boswell's motion will be granted to the extent that the Court will certify a collective action composed of Defendants' healthcare employees in Mississippi and Louisiana who received overtime compensation through the 8 and 80 system between December 1, 2021, and January 31, 2022.

### D. Equitable Tolling of the Statute of Limitations

The FLSA provides a two-year statute of limitations for non-willful violations and a three-year statute of limitations for willful violations. 29 U.S.C. § 255(a). "Under the FLSA, the commencement of a lawsuit does not toll the statute of limitations but, instead, the statute continues to run until putative class members file consent forms." *Brown v. Phenix Transp. W., Inc.*, No. 3:13-CV-781-WHB-RHW, 2016 WL 3648274, at *4 (S.D. Miss. Mar. 31, 2016) (citing 29 U.S.C. § 256(b)).

Equitable tolling can apply to FLSA claims. *See Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). It is a "narrow exception" and should be "applied sparingly." *Sandoz*, 700 F. App'x at 320. The Fifth Circuit has held that for equitable tolling to apply, the plaintiff must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Id.* Additionally, the

circumstances underlying the request must show an external obstacle beyond the plaintiff's control, rather than self-inflicted delay. *Id.*

"The party invoking equitable tolling bears the burden of justifying the need for equitable tolling of the limitations period, but the decision to ultimately invoke equitable tolling in a particular instance is left to the discretion of the district court, subject to appellate review only for abuse of discretion." *Williams*, 2023 WL 3059192, at *20-21 (citation omitted).

Boswell acknowledges that the statute of limitations on her claim of a non-willful violation was set to expire in December 2023. Docket No. 34 at 2. So, on December 1, 2023, she filed this motion requesting equitable tolling of the statute of limitations "from the date that the Defendants' written discovery was due (November 17, 2023), until such time that the Court enters and Order determining whether this lawsuit can proceed as a Collective Action." *Id.* at 4.

Boswell argues that she has "pursued this case with reasonable diligence, by filing the present action approximately ten-months before the two-year statute of limitations." *Id.* at 3. She maintains that her efforts have been delayed by Defendants' actions, including their "requesting, and being granted, an [] extension of time to [respond] to the lawsuit . . . Defendants' failed efforts to transfer venue, and . . . [Defendants'] appeal [of] the denial of their motion to transfer." *Id.* at 2. Without claiming that Defendants intentionally tried to stall her litigation, Boswell says these actions should constitute extraordinary circumstances in the post-*Swales* environment. *Id.* at 3-5. She contends in the current landscape, "every [m]otion filed before the Rule 16 conference, every stay, and every late discovery response or extension shaves precious time off the statute of limitations, and puts potential Claimants in higher and higher risk of losing their opportunity to opt-in." *Id.* at 1-2.

16

Defendants oppose tolling. They argue that Boswell "fails to show how any potential class member has been precluded from asserting any individual rights or from participating in the collective action." Docket No. 38 at 8. As it relates to Defendants' filings before this Court and the Fifth Circuit, Defendants submit "that delays in certifying a case do not present extraordinary circumstances justifying equitable tolling." *Id.* at 9.

Having reviewed the parties' arguments, the Court is not persuaded that equitable tolling is appropriate. Boswell diligently pursued her rights and the rights of potential collective action members by filing this lawsuit long before the statute of limitations was set to expire. But the Court is not persuaded that extraordinary circumstances prevented the potential opt-in plaintiffs from timely filing suit.

The record of this case reflects that Defendants filed a motion to transfer venue pursuant to 28 U.S.C. § 1404 in April 2023. Docket No. 8. In May, this Court denied the motion, finding that Defendants "failed to demonstrate that convenience and justice" warranted transfer of a case involving a Mississippi plaintiff, a Mississippi hospital, and a cause of action arising out of the plaintiff's employment in Mississippi. Docket No. 14 at 9. Undeterred, though, Defendants then filed a petition for a writ of mandamus with the Fifth Circuit and moved for this Court to stay the proceedings. Docket Nos. 16-17. The Court stayed the case in June. The Fifth Circuit denied Defendants' petition later that month. Accordingly, this Court lifted the previously imposed stay.

The result from Defendants' motion and extraordinary appellate practice was that the parties did not appear for their Rule 16 conference until August 2023, nearly six months into the case. *See* Docket No. 22. Boswell moved to toll the statute of limitations on December 1,

17

2023, roughly a month before the two-year statute of limitations would have expired.[2] The present motion to certify a collective action followed on April 16, 2024.

The Court is not persuaded that the motion to transfer venue, petition for a writ of mandamus, or motion for collective certification constitutes an extraordinary circumstance that prevented timely filing. Plaintiff has not presented evidence that any potential opt-in plaintiff was precluded from filing suit because of the current litigation. And as the Fifth Circuit has reasoned, the relevant question is whether an external obstacle "prevented timely filing" not whether it "prevented timely filing *in a specific suit*." *Sandoz*, 700 F. App'x at 321 (emphasis in original). In the absence of evidence that Defendants misled Plaintiff or that potential opt-in plaintiffs have been barred from asserting their rights, the Court does not find that the present situation warrants equitable tolling.

### III. Conclusion

The motions to restrict are granted. Defendants' motion for leave to file a sur-reply is also granted.

Plaintiff's motion to certify a collective is granted in part. The Court limits this collective action to "Defendants' healthcare employees in Mississippi and Louisiana who were eligible for overtime compensation through the 8 and 80 system between December 1, 2021, and January 31, 2022."

Plaintiff's motion to toll the statute of limitations is denied.

**SO ORDERED**, this the 2nd day of October, 2024.

s/ Carlton W. Reeves<br>
UNITED STATES DISTRICT JUDGE

---

[2] This is not a finding as to whether the two-year or three-year statute of limitations will ultimately apply.